IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL DOCKET NO.: 3:02CV449-V

| | |
|---|---|
| JOE STANLEY BROWN,<br>      Plaintiff,<br><br>vs.<br><br>HILLCREST FOODS, INC.,<br>      Defendant. | )<br>)<br>)<br>)    **Memorandum and Order**<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on post-trial motions submitted by the parties. Defendant Hillcrest Foods, Inc. ("Hillcrest") moves pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law with respect to Plaintiff's retaliation claim. (Document #87) Plaintiff Joe Stanley Brown ("Brown") submits a Motion To Preserve Right To Seek Reinstatement Or Frontpay. (Document #88)

### I. Nature Of Case & Procedural History[1]

This action arises out of Plaintiff Brown's allegations of illegal discrimination by Defendant Hillcrest, namely, failure to promote and retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(e)(1) ("Title VII"), and 42 U.S.C. §1981 ("Section 1981").

Accepting the recommendations of the Magistrate Judge, this Court denied summary judgment, finding that genuine issues of material fact precluded judgment as a matter. (Documents #48, #55) As the Court's Memorandum & Order relates to the instant motion and retaliation claim,

---

[1] A thorough recitation of the record evidence prior to trial can be found within the Court's Memorandum & Order dated October 1, 2004. (Document #55)

1

the undersigned expressly found that triable jury issues existed, including: 1) whether Michael Carey knew about Plaintiff's EEOC charge before he fired Plaintiff (causation); 2) the actual timing of / temporal proximity of the EEOC charge in relation to Plaintiff's dismissal; and 3) whether Michael Carey had thoroughly investigated the sexual harassment claims lodged against Plaintiff. (Document #55 at 18-20.)

The case proceeded to jury trial on January 25, 2005, and concluded on January 31, 2005. At the close of the evidence, Hillcrest moved for judgment as a matter of law pursuant to Rule 50(a) on all causes of action as well as Plaintiff's claim for punitive damages. The Court issued an oral ruling denying Hillcrest's motions.

At the conclusion of the trial, the jury returned a verdict in favor of Defendant Hillcrest on the two alleged denial of promotion claims, and in favor of Plaintiff Brown on the retaliation claim. Specifically, the jury indicated that Hillcrest's decisions to not promote Brown to the position of Unit Manager in April and June 2002 were not "motivated at least in part by Plaintiff's race." (Document #85, Issue I, ¶4; Issue II, ¶4) On the retaliation claim, the jury indicated that Brown engaged in protected activity, was subject to an adverse employment action, that Brown's protected activity was a motivating factor in Hillcrest's employment decision. (Document #85, Issue III, ¶¶1-3) The jury then went on to consider whether Hillcrest would have made the same employment decision in the absence of the protected activity based entirely on one or more legitimate, non-discriminatory factors and answered "No." (Document #85, Issue III, ¶4)

The jury awarded Brown compensatory damages for a net loss of wages and benefits through the date of trial in the amount of $100,000, and damages for emotional pain and mental anguish in the amount of $70,000. (Document #85, Issue IV, ¶¶1, 2)

The jury also awarded Brown $250,000 in punitive damages. The punitive damages award was based upon the jury's affirmative answers to the following special interrogatories:

> 1) Did a higher management official of Defendant Hillcrest Foods act with malice or reckless indifference to Plaintiff's federally protected rights?
>
> 2) Did Defendant Hillcrest Foods fail to make a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace?

(Document #85, Issue IV, ¶¶3-5)

Judgment was entered consistent with the jury's verdict. (Document #86) Plaintiff's First and Second Causes of Action were dismissed with prejudice and monetary damages were awarded to Plaintiff on the Third Cause of Action. Prejudgment interest was awarded on Plaintiff's compensatory damages award at a rate of 2.5 %.

## II. Fed. R. Civ. P. 50 & Standard Of Review

Rule 50(a) of the Federal Rules of Civil Procedure governs Hillcrest's motion and provides as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

A Rule 50 motion for judgment as a matter of law is subject to the same standard as a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir.2002). Thus, in considering Defendant's motion, the Court must "view the evidence in the light most favorable to the [Plaintiff], the nonmovant, and draw all reasonable inferences in [his] favor, without weighing the evidence or

3

assessing the witnesses' credibility." Dennis, 290 F.3d at 644-45 (*citing* Baynard v. Malone, 268 F.3d 228, 234 (4th Cir.2001)). The jury's verdict may only be set aside "if a reasonable jury could only rule in favor of [Hillcrest]. Id. (*citing* Sales v. Grant, 158 F.3d 768, 775 (4th Cir.1998)); Anderson, 477 U.S. at 250. If reasonable minds could differ, the jury's verdict must stand. Id.

### III. Defendant's Motion For Judgment As A Matter Of Law[2]

#### A. Retaliatory Discharge

In order to succeed on a retaliatory discharge theory, Plaintiff had to present evidence demonstrating: 1) that Plaintiff engaged in protected activity (i.e., EEOC Charge); 2) that the employer took an adverse employment action against Plaintiff (i.e., he was fired); and 3) that a causal connection existed between the protected activity and the adverse action. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994); 42 U.S.C. §2000e-3(a).[3]

---

[2] Under Rule 50(b), "the movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment . . ." Hillcrest's motion was filed within 10 days of entry of judgment and is, therefore, timely.

[3] Title VII explicitly prohibits discrimination (or retaliation) for an employee's participation in protected activity:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Although Section 1981 does not expressly provide for a cause of action based upon retaliation, the Supreme Court has recognized its application in this context. *See* Lytle v. Household Manuf., Inc., 494 U.S. 545 (1990) (plaintiff's Title VII and Section 1981 retaliation remedies are "separate, independent and distinct" but require proof of the same elements).

In this case, the only substantive issue for jury deliberation on Plaintiff's retaliation claim was whether or not causation was established. The jury unanimously concluded that Hillcrest's decision to fire Plaintiff two days after learning of his EEOC Charge was motivated in part by the filing of the EEOC Charge complaining that Carey was discriminating against him based upon his race. Defendant now asks the Court to set aside the jury's verdict as a matter of law, alleging that there is no evidence to support the jury's finding. Defendant attempts to circumvent the applicable standard as Defendant asks the Court to weigh evidence and assess witness credibility - functions reserved for the jury.

Defendant's motion likewise fails on the merits. Defendant argues that "[t]he jury's only decision should have been whether Mr. Brown was terminated solely because he filed an EEOC charge." (Def.'s Mem. In Supp. at 13.) Thus, according to Defendant, Plaintiff can only prevail if the EEOC charge was the *sole* basis for his termination. The Court rejected this argument during the charge conference and elected to give a "motivating factor" instruction in connection with the retaliation claim. (Tr. Vol. IV at 515, 594-95, 601) *See* Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 553 n.8 (4th Cir.1999) ("mixed-motive proof scheme is available to a Title VII plaintiff in order to prove a retaliation claim under §704 if the plaintiff can establish the necessary evidentiary threshold.") Rishel, 297 F.Supp 2d 854 (M.D.N.C. 2003).

Once a trial has proceeded to completion, the *McDonnell Douglas*[4] burden shifting framework no longer governs. Dennis, 290 F.3d at 645 (*citing* Gibson v. Old Town Trolley Tours of Washington D.C., 160 F.3d 177, 180 (4th Cir.1998)). Instead, Plaintiff "face[s] the ultimate burden of proving [his] case." Id. A summary of the relevant trial evidence bearing on the factual issues

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

identified by the Court previously is discussed herein.

The following evidence supports the jury's finding that Michael Carey knew about Plaintiff's EEOC Charge before Carey fired Plaintiff:

- Michael Carey (former Regional Manager for Hillcrest) denied having any knowledge of Plaintiff's EEOC charge and testified that he was only asked to explain to Michael Wheeler (Hillcrest's Senior Area Manager) why Plaintiff was not promoted to the unit manager position; (Tr., at 277-78.)
- Robert O'Rear (Hillcrest's Secretary / Treasurer) entrusted Michael Wheeler (or Wheeler's designee) with investigating EEOC complaints for Hillcrest (Tr., at 200.)
- Wheeler testified, via deposition, that he received the EEOC charge from O'Rear and forwarded it to Carey for investigation. (Tr. Trans., at 218-19; Wheeler Dep., at 58:1, 60:9 and Tr., at 242.)

The following evidence relates to the temporal relationship between Plaintiff's EEOC Charge, Defendant's written response to the EEOC, and Carey's decision to terminate Plaintiff:

- In his three and one-half (3 ½) years of employment with Hillcrest, and up until the date of his actual termination, Plaintiff had not ever been *formally* disciplined;
- At the same time he was given his separation notice terminating his employment, Plaintiff was handed an "Associate's Warning" indicating that he was being disciplined for bad behavior and sexual harassment; (Tr., at 94-95; Pl.'s Exhs. 12, 13)
- Plaintiff was fired two (2) days after Carey drafted Hillcrest's memo in response to the EEOC charge.

The following evidence supports the jury's apparent finding that Carey's investigation of the sexual harassment allegations against Plaintiff was deficient:

- O'Rear testified, via deposition, that an EEOC investigation should include written statements from both the accuser and the accused; (Tr., at 197.)

- O'Rear testified that it was Hillcrest's policy that an employee who is complained about 1) be put on notice of the complaint; 2) may be suspended during an investigation depending upon the gravity of the situation; and 3) be given an opportunity to respond to the charges prior to termination. (Tr., at 198.)
- Wheeler testified that Hillcrest's investigation of sexual harassment charges against one of its employees should include a visit to the restaurant, interviews of the people that were working at the time, an interview of the accused if available, a talk with the manager, and anybody that might have information about the incident. (Tr., at 220-21.)
- Wheeler testified that, where possible, written statements documenting the investigative interviews (of the employees making the allegations as well as from the accused) should be obtained; (Tr., at 221.)
- Carey testified that he made several attempts to contact Plaintiff by phone during Plaintiff's scheduled shift and had requested, via the store manager, an opportunity to talk to Plaintiff; (Tr., at 276, 317-18.)
- Carey testified that he was advised that Plaintiff or Plaintiff's lawyer did not want Plaintiff talking to him; (Tr., at 276, 318.)
- Plaintiff testified that when he learned he was being fired for engaging in sexual harassment, he expressed a desire to talk with Carey but Carey refused to talk to him; (Tr., at 93.)
- Plaintiff testified that the day before he was fired, Carey was present in the store meeting with Joni Bradshaw when Plaintiff was getting off work at the end of the third shift; (Tr., at 92-93.)
- Plaintiff was not asked to provide a written statement in response to the allegations of sexual harassment made against him; (Tr., at 95.)
- Carey did not interview Jenny Gibson, the unit manager on duty at the time of the alleged "cucumber incident" nor did he ask her for a written statement; (Tr., at 374-75, 310-11.)
- Carey did not interview any of the other employees on duty during the night of the

7

alleged "Vienna Tope incident" nor did he ask for written statements from those employees. (Tr., at 312-13, 375.)

In addition to the evidence already mentioned, the following evidence provides a basis for the jury's finding that Defendant's purported reason for firing Plaintiff may have been pretext, or that Plaintiff's protected activity may have been a motivating factor in the decision:

- All of the evidence regarding the nature and scope of Carey's investigation of the alleged sexual harassment of co-workers by Plaintiff;
- Unit Manager Jenny Gibson agreed during cross-examination that "staff in the store joked fairly regularly about sexual matters"; that "women would joke with women about sexual issues"; that "the males and the females would banter back and forth"; and that with respect to the cucumber incident, "we joked about – you know, they all was joking about it . . . "   (Tr., at 372.)
- Plaintiff testified that he had known Jenny Gibson a long time and that they had the sort of relationship where they could banter with each other; (Tr., at 88.)
- Other alleged incidents of sexual harassment involving other Hillcrest employees either 1) did not result in termination of the charged employee; 2) involved some sort of unwelcome physical contact; or 3) involved multiple or continued incidents despite warnings   (Tr., at 215-16, 270, 301-08, 327-28.)
- Plaintiff testified that after he was fired, Danny Barnhardt (former Hillcrest District Manager) told him that he could probably get Plaintiff his job back if Plaintiff would drop his lawsuit; (Tr., at 97.)
- Plaintiff testified that prior to events giving rise to this lawsuit, Carey asked him to fabricate a story about former employee Michelle Cooper in order to justify Hillcrest's termination of Cooper but Plaintiff refused; (Tr., at 75-76, 93-94.)
- Hillcrest initially indicated to the Employment Security Commission that Plaintiff voluntarily resigned his position and then challenged the decision to award unemployment benefits to Plaintiff. (Tr., at 99; Pl.'s Exh. 28)

8

As Plaintiff suggests, it appears that the jury did not find Defendant's witnesses, including Michael Carey, credible. Given the nature of Plaintiff's claims, credibility was key. If the jury found Carey not credible, the jury could then conclude that Carey was fully aware of the EEOC charge filed by Plaintiff against Hillcrest; that Carey did *not* possess a good faith belief that Plaintiff's coworkers (Ms. Bradshaw and Ms. Tope) were truthful about the alleged sexual harassment by Plaintiff; and that Carey's decision to terminate Plaintiff's employment was motivated at least in part by a retaliatory motive. The jury's credibility determinations, and the weighing or evaluation of each witnesses' testimony was entirely proper. In short, reasonable minds could differ as to inferences reasonably supported by the evidence.[5] Thus, Defendant's motion must be <u>denied</u>.

**B. Back Pay Award**

Back pay is not available under §1981a(b)(2) but is expressly provided for within 42 U.S.C. §2000e-5(g)(1). Section 2000e-5(g)(1) provides:

> If the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employee, **with or without back pay** (payable by the employer responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.
> ***
>
> Interim earnings or *amounts earnable with reasonable diligence* by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. §2000e-5(g)(1) (*emphasis added*).

---

[5] Defendant's characterization of the "facts" and "evidence" is sanctionable. If the undersigned had not presided over the trial, and did not have access to the official trial transcript, the Court could easily be misled about the record evidence.

A successful Title VII plaintiff is "presumptively entitled to back pay." Szedlock v. Tenet, 139 F.Supp.2d 725, 732 (E.D.Va.2001) (*citing* Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). The Supreme Court explained in Albemarle Paper that "given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Albemarle Paper Co., 422 U.S. at 421. The Supreme Court also explained that the back pay provisions within Title VII are intended to give the courts "wide discretion" to exercise their equitable powers and "fashion the most complete relief possible." Albemarle Paper Co., 422 U.S. at 421.

Hillcrest argues that Plaintiff should only be entitled to net lost wages of $85,937.50 given his rate of pay at the time of termination.[6] Hillcrest also contends that Plaintiff's back pay award should be reduced due to Plaintiff's purported failure to mitigate damages.

Plaintiff Brown testified that after being terminated, he went "pretty much every day or every other day looking for work, mainly at restaurants, but most of them wasn't[sic] hiring. And after it got so frustrating, probably after a year or so, I started doing work on small engines . . ." (Tr., at 97-98.) Plaintiff introduced records from the Employment Security Commission documenting his efforts to secure employment during the period of time he received unemployment benefits. These records include entries from September 3, 2002 through March 20, 2003, and reveal that Plaintiff applied for various cook / food-prep positions as well as driver positions. (Pl.'s Exh. 28) Beyond March 2003,

---

[6] According to Plaintiff, Defendant's back pay calculation for the relevant time period is based upon 50 work weeks rather than 52 work weeks per year. Plaintiff suggests that even if the back pay award were calculated solely based upon the $687.50 / week pre-termination rate of pay, Plaintiff would be entitled to $89,375.00 in back pay.

Plaintiff provided no evidence that he was diligently seeking employment. Plaintiff also did not offer into evidence records of any income earned due to self-employment (small engine repair).

Section 2000e-5(g)(1) places the burden of proving failure to mitigate damages on a Title VII defendant. Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1273 (4th Cir.2001). The jury was instructed accordingly - that Plaintiff's damages award, if any, must be reduced if the jury determined that Plaintiff did not make reasonable efforts to obtain employment of a "like nature" or did not act reasonably in refusing to seek or accept any particular job. (Tr., at 604-05.) Hillcrest did not present any evidence on this issue, yet the jury apparently deemed Plaintiff's actions reasonable. Given the equitable nature of the relief, the Court has an obligation to ensure that the back pay award is, in fact, equitable.

Notwithstanding Defendant's burden to establish its affirmative defense, Plaintiff has the burden of producing evidence in support of his damages claim. EEOC v. Pizza Hut Of Roanoke Rapids, Inc., 989 F.2d 492 (E.D.N.C.1993). Plaintiff's own evidence is deficient in that it does not support the amount of the back pay award indicated by the jury's verdict. Plaintiff's back pay award must be reduced consistent with the actual record evidence. Specifically, Plaintiff is entitled to back pay only through March 20, 2003. Because there is no evidence that Plaintiff received any benefits in addition to his hourly wage, Plaintiff's back pay award should be calculated based upon his actual rate of pay.[7] In light of the jury's verdict with respect to the promotion claims, calculation of back pay must be based upon Plaintiff's pay rate as a Grill Operator and not reflect any award based upon speculation that Plaintiff may have been promoted to Unit Manager at some future time.

---

[7] The fact that Hillcrest Grill Operators were not eligible for benefits was one of the reasons Plaintiff considered the Unit Manager position so desirable.

According to Plaintiff, the loss of his home and car, his prior criminal record, health concerns, and the need to care for his disabled son, significantly limited his employment options. However, Title VII's objective of making a plaintiff "whole" does not entitle Plaintiff to back pay during a period of time when unrelated (non-discriminatory / non-retaliatory) factors existed that interfered with his ability to work. *See generally*, Szedlock, 139 F.Supp.2d at 734-35 (factoring plaintiff's pronounced hearing loss into mitigation of damages analysis and finding that her disability did not render job search futile).

### C. Punitive Damages Award

Defendant challenges the punitive damages award on three grounds, each of which are discussed in turn.

#### 1. The Jury's Punitive Damages Award Is Supported By The Evidence

Title 42, United States Code, Section 1981a, reads in pertinent part:

> A complaining party ***may*** recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. §1981a(b)(1). The terms "malice" and "reckless indifference" refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). In other words, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 442 (4th Cir.2000) (*quoting* Kolstad, 119 S.Ct. at 2124.))

During cross-examination, Michael Carey acknowledged his understanding, as early as June 2002, that it would be illegal to fire an employee for filing an EEOC Charge. (Tr., at 290.) There was also evidence presented from which a reasonable jury could infer that Carey was, in fact, aware of the pendency of Plaintiff's EEOC Charge despite Carey's claimed ignorance. Thus, viewed in the light most favorable to Plaintiff, there is sufficient evidence from which a jury could find that Carey's decision on behalf of Hillcrest was made in the face of a perceived risk that firing Plaintiff may violate federal law.

In addition to demonstrating malice and reckless indifference, plaintiff must prove that punitive damages should be imputed to the employer. "[A]n employer may be held vicariously liable for a punitive damage award in a Title VII case for the intentionally discriminatory conduct of its employee where the employee served the employer in a managerial capacity, committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good faith efforts to comply with Title VII." Lowery, 206 F.3d at 442 (*citing* Kolstad, 119 S.Ct. at 2129)).

The first two criteria do not warrant discussion in that Hillcrest concedes the level of authority that the relevant employees possessed, and that the conduct at issue was within the scope of the employees' respective employment. The jury's verdict expressly rejected the good faith defense. The Court does not find, as a matter of law, that the jury's finding as to absence of "good faith" must be set aside. *See* Golson v. Green Tree Fin. Serv. Corp., 26 Fed. Appx. 209, 214 (4th Cir.2002)(*unpublished*) ("Evidence that an employer is not sincerely committed to enforcing [its anti-discrimination] policy may undermine the existence of a company-wide policy.")

The following evidence supports the jury's punitive damages award:

- Hillcrest did not have any individual employee responsible for human resources; (Tr., at 196.)

- O'Rear was in charge of EEOC compliance for Hillcrest; (Tr., at 196.)

- O'Rear testified that when Hillcrest had "legal issues like [this case]," one of his responsibilities was to "help work with the staff to try to get documents together we need to respond to those complaints." (Tr., at 195.)

- O'Rear never had any formal training regarding how to respond to EEOC complaints and Hillcrest had no standard form for documenting an EEOC investigation; (Tr., at 196-97.)

- Michael Carey (Regional Manager) was identified in Plaintiff's EEOC charge as the perpetrator of the alleged discriminatory conduct;

- Wheeler assigned sole responsibility for investigating Plaintiff's EEOC charge to Carey; (Tr., at 199-200, 219.)

- O'Rear relied entirely on the information provided by Michael Carey in responding to the EEOC charge; (Tr., at 200-01, 204-05.)

- O'Rear did not discuss Plaintiff's termination - within a week of Hillcrest's response to Plaintiff's EEOC charge - with Wheeler or Carey; (Tr., at 206-07.)

- The inadequacy of Carey's investigation as a whole;

- Hillcrest did not introduce into evidence any written anti-retaliation policy; and

- Hillcrest failed to present any evidence that it trained its employees about the anti-retaliation provisions of Title VII.

**2. The Punitive Damages Award Is Not Capped By Statute**

Defendant contends that the punitive damages award in this case is prohibited by Title VII's statutory limit under 42 U.S.C. §1981a. Section 1981a, entitled "Damages in cases of intentional

discrimination in employment," governs issues concerning damages with respect to claims under Section 1981 and Title VII. Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 851 (2001)(explaining the purpose of §1981a as making the same remedies available in all cases where intentional discrimination is shown).

If Plaintiff Brown were proceeding *solely* under Section 1981a, his damages award, including punitive damages, would be subject to a limitation or cap based upon the number of respondent's employees. However, Section 1981a contemplates that available remedies under Section 1981 and Title VII may complement each other such that a successful plaintiff obtains the maximum award possible. *See* 42 U.S.C. §1981a(1) (where complaining party cannot recover under section 1981, plaintiff may receive compensatory and punitive damages as allowed in section (b) in addition to relief authorized by section 706(g) of the Civil Rights Act of 1964); Lowery, 206 F.3d at 441 (where plaintiffs prevailed under both Section 1981 and Title VII, the Civil Rights Act of 1991 only allows recovery of punitive damages under Section 1981).

In this case, Plaintiff prevailed under both 1981 and Title VII. Plaintiff contends that, as a result, consistent with the plain language of 1981a(1), Plaintiff's damages need only comport with Section 1981 - not 1981a. Defendant, on the other hand, contends that the cap within §1981a limits its damages exposure.[8] In support, Defendant cites Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179 (4th Cir.2000). In Conner, the Fourth Circuit applied the cap on damages within §1981a.[9]

---

[8] Under Section 1981a, the largest monetary award (for a respondent with more than 500 employees) is not to exceed $300,000. 42 U.S.C. §1981a(b)(3)(D). Relying on this provision, Defendant asserts that, at minimum, the Court is required to reduce the award by $20,000.

[9] The actual opinion reference is to Section 1981a(c) as opposed to Section 1981a(b), which sets forth the various caps based upon the number of employees. However, the text of the parenthetical explains the court's intent to limit Plaintiff's total Title VII award to a maximum of $300,000.00,

Conner, 227 F.3d at 202. However, Conner was not a Section 1981 case in that the plaintiff only brought a Title VII action alleging a hostile work environment towards women. There were no claims alleging discrimination based upon race. For this reason, Conner does not support Hillcrest's interpretation of 1981a(b). In addition, Section 1981a expressly notes an intent to not limit the scope of relief already provided for under 1981. 42 U.S.C. §1981a(b)(4) ("Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1981 of this title."); Pollard, 532 U.S. at 851 (compensatory and punitive damages under §1981 are not limited by statute). Because Plaintiff recovered under Section 1981 and Title VII, Plaintiff's punitive damages award is not subject to the statutory limitations within Section 1981a(b).

**2. The Punitive Damages Award Does Not Violate Due Process**

Due Process is offended by a jury award of punitive damages "[o]nly when [the] award can fairly be categorized as "grossly excessive" . . ." BMW of North Am., Inc. v. Gore, 517 U.S. 559, 568 (1996). In determining whether a punitive damages award is so excessive that it may be deemed arbitrary and, therefore, contrary to due process principles, the degree of reprehensibility of the defendant's conduct, its ratio to the actual harm or potential harm suffered by the plaintiff, and the degree of civil or criminal penalty that could be imposed for comparable misconduct may be considered. Gore, 517 U.S. at 575, 580 and 583. In evaluating whether due process is offended by a particular punitive damages award, the trial court's role is to "compare its own 'independent judgment on the appropriate amount with the jury's award to determine whether the jury's award is so excessive as to work an injustice.'" Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 548 (4th

---

dependent upon the district court's factual findings upon remand. Conner, 227 F.3d at 202 and n.23 ("Title VII plaintiff's total compensatory and punitive damages award may not exceed $300,000.")

16

Cir.2003) (*quoting* Atlas Food Sys. And Svcs. v. Crane Nat'l Vendors, 99 F.3d 587, 595 (4th Cir.1996)).

Hillcrest argues that the $250,000 punitive damages award is unjust because 1) Hillcrest's purported illegal conduct was confined to a single, isolated incident; and 2) the jury found that Hillcrest's decision regarding Plaintiff's promotion was not motivated by race. Defendant's due process challenge to the punitive damages award focuses on "relatively low reprehensibility." *See* State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 418-429 (2003) (the degree of reprehensibility of the defendant's conduct is the "most important indicium of the reasonableness of a punitive damages award.") (*quoting* Gore, 517 U.S. at 575.) The degree of reprehensibility takes into account whether:

> the harm caused was physical as opposed to economic; the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Campbell, at 1521 (*quoting* Gore, 517 U.S. at 576-77. Here, the financial vulnerability of the Plaintiff serves as one basis for the jury's punitive damages award. The implicit finding by the jury that Michael Carey was less than forthcoming about his knowledge of Plaintiff's EEOC Charge, serves as yet another basis for the award. Most significantly, however, the facts as found by the jury[10] regarding Hillcrest's overall "indifference" regarding its compliance with federal anti-retaliation / anti-discrimination laws, justify the amount of the punitive damages award.

---

[10] Had the undersigned been tasked with evaluating the evidence independently, it would have likewise found that the evidence presented at trial supported the jury's finding that Hillcrest had little genuine concern with its compliance with federal anti-discriminatory / anti-retaliatory laws.

### D. Impeachment Of Vienna Tope

Defendant contends that Plaintiff's impeachment of Vienna Tope was improper under Rule 403 of the Federal Rules of Evidence. FED. R. EVID. 403. To the contrary, Plaintiff, through counsel, was allowed to cross-examine Tope about her prior criminal history and about possible alternative motives for asserting a sexual harassment claim against Plaintiff. Specifically, Tope was asked about the truthfulness of an answer she had given on her application of employment for the Hillcrest Foods job. (Tr., at 417-18.) Because the relevant application question inquired whether or not Tope had any prior convictions, to which Tope responded "no," counsel was allowed to ask the witness about her prior convictions to establish that the witness had submitted false information in her job application. The gist of Plaintiff's cross-examination was not the prior conviction. Rather, counsel sought to question the witness regarding her capacity for truthfulness.

Aside from evaluating Tope's credibility, the undersigned agrees with Defendant that the jury's inquiry with respect to Tope's testimony should have been limited to "whether Hillcrest *believed* that Mr. Brown sexually harassed two employees." (Def.'s Mem. In Supp., at 9.) The Court's instructions to the jury with respect to impeachment generally and the effect, if any, a witnesses' prior conviction may have in weighing credibility were consistent with this limited purpose. This evidentiary ruling was within the Court's discretion.

## V. Order

For the reasons stated herein, the Court will <u>grant in part</u> and <u>deny in part</u> Defendant's Motion For Judgment As A Matter Of Law. FED. R. CIV. P. 50(b)(1)(A). Plaintiff's Motion To Preserve Right To Reinstatement And Frontpay will be granted.[11]

**IT IS HEREBY ORDERED THAT:**

1) Defendant's Rule 50 motion is **GRANTED in part and DENIED in part**;

2) The parties shall submit a proposed Final Judgment consistent with the terms of this Memorandum and Order **no later than November 17, 2006**. The Judgment shall reflect all aspects of the jury's verdict, except with respect to the back pay award. Back pay shall be calculated based upon the actual record evidence of Plaintiff's rate of pay as a Grill Operator through March 20, 2003; and

3) Plaintiff has preserved the right to seek reinstatement and front pay and his motion to that effect is **GRANTED**.

Signed: November 16, 2006

Richard L. Voorhees
United States District Judge

---

[11] Plaintiff does not seek reinstatement (or frontpay in lieu of reinstatement) at this time but, instead, only seeks to preserve the right to pursue these equitable remedies in the event that the punitive damages award is adjusted on appeal. (Pl.'s Mot., ¶¶4, 5) Defendant opposes Plaintiff's motion and asserts that Plaintiff is not entitled to reinstatement or frontpay under any set of circumstances. However, since Plaintiff only seeks to preserve the issue, there is no need to consider the merits of Plaintiff's request at this stage of the proceedings.

[](...)